OPINION
Appellant, Thomas L. Mitchell, appeals from a judgment entered by the Trumbull County Court of Common Pleas on June 27, 2000. Appellant was found guilty by a jury of failure to comply with order or signal of a police officer in violation of R.C. 2921.331(B), a third degree felony as a result of the findings pursuant to subsection (C)(5)(a)(ii). Appellant was sentenced to serve four years in the Lorain County Correctional Institution.
The following facts are undisputed. On March 23, 2000, around 3:20 a.m., Donald Walker, a trooper with the State Highway Patrol in Trumbull County, observed a red, four door, 1988 Pontiac Bonneville proceeding eastbound on State Route 422 in Weathersfield Township, Ohio. After noticing the vehicle go left of center twice, Trooper Walker activated his lights and siren to stop it. The driver ignored Trooper Walker's signals, and led Trooper Walker on a high-speed chase. At times the chase reached speeds nearing ninety m.p.h. in a twenty-five m.p.h. zone. The vehicle committed several other traffic violations during the chase including running red lights, going left of center, and forcing vehicles to the left of the roadway. The chase lasted about six miles and went from Weathersfield Township, through Girard, Ohio, and into Youngstown, Ohio.
Once the chase entered Youngstown, a Youngstown patrol car joined the pursuit. The chase ended on Delaware Street in Youngstown, when the suspect jumped from the vehicle, leaving it in gear. The Youngstown officer chased the vehicle to stop it. Meanwhile, Trooper Walker followed the suspect in his patrol car. The suspect ran between two houses, and Trooper Walker got out of his car and chased him on foot. The suspect jumped over a fence and entered backyards, at which time Trooper Walker heard dogs barking and stopped the chase.
Trooper Walker searched the car and discovered that it belonged to Byrant Battles. Trooper Walker then returned to his post. About five minutes later, Trooper Walker received a call from Mr. Battles. Mr. Battles came down to the post and spoke with Trooper Walker. Trooper Walker stated that Mr. Battles did not look like the suspect. Mr. Battles informed Trooper Walker that he worked at MCI Worldcom in Niles, Ohio. Mr. Battles has not been seen since, and attempts to serve him with a subpoena to testify in this case were unsuccessful.
The next evening Trooper Walker went with Sgt. Sam Esposito and a Niles police officer to MCI Worldcom in Niles.[1] Trooper Walker asked the security guard to get appellant. Trooper Walker then issued the traffic citations from the previous night to appellant.
The only contested issue in this case is whether or not the appellant was the driver of the vehicle. The state contends that Trooper Walker got two close looks at the suspect's face when the suspect was fleeing on foot. One of these looks was from the patrol car, and the other was during the foot pursuit from about ten feet when the suspect turned and looked behind. Trooper Walker positively identified the appellant as the suspect when he issued the citations. Trooper Walker again identified appellant as the suspect from the witness stand at appellant's trial. The state further contends that the suspect was wearing distinctive rose-colored, gold-rimmed glasses on the night in question, and appellant is known to wear these glasses, although he was not wearing them the next day at work or during any of the proceedings in this case.
Appellant contends that Trooper Walker's descriptions of the suspect's height vary from 5'8" to 6'0" to 6'3". Appellant also asserts that the gold-rimmed glasses are not unique. Appellant contends he was at home during the events, and his mother testified as an alibi witness stating that she had to unlock the door for appellant about 2:00 a.m. on the night in question.
Appellant's only assignment of error is:
 "The appellant's conviction is against the manifest weight of the evidence."
 In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted). State v. Tompkins
(1997), 78 Ohio St.3d 380, 387
 Here, we do not see that the jury lost its way, nor do we consider this the exceptional case in which the evidence weighs heavily against a conviction.
Trooper Walker testified at trial as to the description of the suspect, and that he identified appellant as the suspect the very next day. He again identified appellant as the suspect at trial. Further evidence in support of appellant being the suspect was provided by Robert O'Mally,[2] who testified that the appellant wore the gold-rimmed glasses regularly. The state also showed the jury videotape of the police chase.
Appellant also produced evidence at trial. Appellant's mother testified that he was home on the night in question because she had to let him in. Appellant also showed that Bryant Battles essentially disappeared, as service of a subpoena was ineffective. Another contention of appellant that was raised during trial is that Trooper Walker's descriptions of the suspect were inconsistent, and his identifications of appellant were inaccurate.
Both sides presented evidence favorable to their case. It is well settled that "[i]n either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio
St.2d 230, 231. It was up to the jury to determine the weight of the evidence at trial. It was also up to the jury to determine how credible both Trooper Walker and appellant's mother were. These determinations made by the jury, about which witnesses to believe or not to believe, will only be disturbed if we find that the jury clearly lost its way or created a manifest miscarriage of justice. That is not the case here.
This is not the exceptional case that would justify this court reversing the judgment of the trial court. Here the evidence did not weigh heavily against a conviction. There was adequate evidence provided by the prosecution for the jury to convict appellant. Further, the evidence in defense was not overwhelming enough to show us that the jury clearly lost its way in convicting appellant.
We hold that appellant's assignment of error is without merit. Judgment affirmed.
 ___________________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
FORD, J., CHRISTLEY, J. concur.
[1] The transcript of the trial does not indicate how the officers learned that appellant worked at MCI Worldcom.
[2] Mr. O'Mally was appellant's probation officer. This fact was withheld from the jury due to its prejudicial nature.